[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14913

_____

Agency No. A026-336-441


ROGER RICARDO ALFARO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 13, 2017)

Before TJOFLAT and WILSON, Circuit Judges, and ROBRENO,[*] District Judge.

WILSON, Circuit Judge:

_____

[*] Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Roger Ricardo Alfaro seeks review of the Board of Immigration Appeals' (BIA) final order of removal. In its decision, the BIA affirmed an immigration judge's finding that Alfaro is removable under 8 U.S.C. § 1227(a)(1)(A) for having willfully made a material misrepresentation on his application to adjust his status to that of a lawful permanent resident. For the following reasons, we remand and order that his petition be granted.

## I.

Alfaro is a native and citizen of Nicaragua who was admitted to the United States on a nonimmigrant tourist's visa in 1981. A year later, in 1982, he successfully petitioned to change his status to that of a lawful permanent resident. Thirty-one years later in December 2013, Immigration and Customs Enforcement (ICE) served Alfaro with a Notice to Appear alleging that he was subject to deportation for committing two or more crimes involving moral turpitude (CIMTs) not arising out of the same criminal scheme, under Immigration and Nationality Act (INA) § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii).[1] Alfaro challenged the charge of removal in the Notice and filed several petitions to avoid his deportation. However, following his first immigration hearing on the merits of his petitions,

---

[1] Shortly after this appeal was filed, the Government filed a motion to dismiss based on a lack of jurisdiction due to Alfaro's convictions for CIMTs triggering the Criminal Alien Bar, a statutory provision that strips appellate courts of their jurisdiction to review final removal orders of criminal aliens. However, the Government moved to withdraw this argument in light of new, binding precedent from the BIA. We grant that motion to withdraw. Thus, the only remaining issue is whether Alfaro's answer on his application to adjust his status constitutes a willful material misrepresentation justifying deportation.

ICE added another charge for Alfaro's removal—that he was inadmissible at the time he adjusted his status because he willfully made a material misrepresentation on his 1982 adjustment of status application under INA § 212(a)(19), 8 U.S.C. § 1182(a)(19) (1982).  Alfaro answered "no" to Question 17 on the application, which asked whether he had ever been "arrested, convicted, or confined to a prison."  ICE maintains that Alfaro's answer constituted a willful misrepresentation of a material fact, making him removable under INA § 237(a)(1)(A), 8 U.S.C. §1227(a)(1)(A).

The record reflects that in the early 1980s, before he fled Nicaragua, Alfaro was a United States-trained Contra rebel fighting to overthrow Nicaragua's socialist government, which was headed by the Sandinista regime.  At some point in 1980 during this wartime period, Alfaro was held, by his peers, in a rebel-controlled trailer in the middle of the Nicaraguan jungle.   He was taken there following an incident that occurred while he and some other Contras were transporting five captured Sandinista prisoners of war.  One of the Contras ordered Alfaro to move the Sandinista prisoners, who were handcuffed and chained together.  At some point during the transport, Alfaro severed the hand of a deceased prisoner, who was killed prior to the severing by another Contra after the prisoner tried to escape.  Alfaro, his fellow rebels, and the chained prisoners were all under enemy fire at the time.  And because the prisoner was already deceased,

3

Alfaro thought it best to cut him loose so that the rest of the chained prisoners could continue on to safety without the dead weight. After this incident, Alfaro was temporarily held in a trailer by the rebels.

Appearing pro se for his administrative appeal, Alfaro unsuccessfully attempted to clarify the misunderstanding about his time and experiences with the Contras. Alfaro had himself previously described his place of confinement as a "jail" during a prior adjustment of status hearing. An immigration judge delivered an oral decision, finding that Alfaro was removable because he made a material misrepresentation on his application to adjust his status. Specifically, the immigration judge found that given his confinement in a trailer by the Contras, Alfaro misrepresented a material fact when he answered "no" to the question asking whether he had ever been confined in a prison. On appeal, the BIA also concluded that Alfaro had been confined in a prison. And based on that determination, the BIA issued a final order of removal finding that Alfaro made a willful material misrepresentation on his application to adjust his status. Alfaro was deported to Nicaragua and timely petitioned this court to review the BIA's decision.

In his petition, Alfaro argues that he did not make any material misrepresentation, let alone a willful one, on his 1982 application to adjust his

4

status, because a rebel-controlled trailer in the jungle does not constitute a "prison."

## II.

"On appeal, we review only the BIA opinion[,]" unless it expressly adopts the immigration judge's opinion. *Jean-Pierre v. U.S. Att'y Gen.*, 500 F.3d 1315, 1320 (11th Cir. 2007). We review the BIA's legal determinations de novo. *See Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1344 (11th Cir. 2007).[2] Questions of law include determining the application of "a legal definition to a set of undisputed or adjudicated historical facts." *Jean-Pierre*, 500 F.3d at 1322.

According to the INA, aliens who were inadmissible at the time of their status adjustment are subject to deportation pursuant to INA §237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A). And at the time Alfaro filled out his application to adjust his status in 1982, aliens who willfully made a misrepresentation of a material fact on any visa or other documentation, which includes an application for an adjustment of status, for the purposes of admission into the United States were considered inadmissible. *See* 8 U.S.C. § 1182(a)(19) (1982). While a willful misrepresentation does not require intent to deceive, it does require a "false

---

[2] The government argues that we should instead review the BIA's decision for sufficiency of the evidence because Alfaro does not raise a legal question. We disagree with the government's characterization of Alfaro's claim.

representation[] of a material fact made with knowledge of its falsity." *Ortiz-Bouchet v. U.S. Att'y Gen.*, 714 F.3d 1353, 1356–57 (11th Cir. 2013) (per curiam) (internal quotation marks omitted).

The BIA's determination that Alfaro was confined to a prison is erroneous. The status adjustment application asked whether Alfaro had ever been confined in a prison, and we cannot conclude as a matter of law that a rebel-controlled trailer in the middle of the Nicaraguan jungle is a "prison." In ordinary usage, a prison is a "building or complex where people are kept in long-term confinement as punishment for a crime . . . specif[ically], a state or federal facility of confinement for convicted criminals." Black's Law Dictionary (10th ed. 2014). Both the definition and the plain meaning of the word suggest that legal authority to confine someone is a necessary component. That is to say, a prison is an instrumentality of the state, and it is the state's legal authority to confine someone that distinguishes confinement in a prison from confinement by one without legal authority to do so, say a kidnapper, for instance.[3]

In arguing that Alfaro's confinement constitutes confinement in a "prison," both the government and the BIA liken the trailer to a military prison because Alfaro was placed there involuntarily, during wartime, following a war-related incident. But Alfaro was not confined in a prison, he was confined in a small

---

[3] Even assuming that Alfaro did previously say that he was in "jail," whether Alfaro was confined to a prison is a question of law determined by the definition of the word "prison."

trailer, in a jungle, by a group of his peers—the Contras—fellow rebels fighting to overthrow their government.  It was nothing like a military prison.  The Contras were not military personnel, they were insurgents, and they were not acting under any governmental or legal authority to detain him.  The Contras did not charge or convict Alfaro of any crime because they lacked the authority to do so.  Indeed, it is not even clear whether Alfaro was being punished or whether he was just being questioned pending an inquiry into the incident.  Regardless, we hold that as a matter of law, a rebel-controlled trailer in a jungle is not a "prison."

Consequently, because Alfaro's time in the trailer did not constitute confinement in a prison, we need not discuss whether ICE met its burden of proof in establishing that Alfaro made a "willful" misrepresentation in violation of 8 U.S.C. § 1182(a)(19) (1982).  *See Ortiz-Bouchet*, 714 F.3d at 1356–57.

## III.

Because he had not been confined in a prison, Alfaro did not make a material misrepresentation on his application for an adjustment of his status to become a lawful permanent resident of the United States when he answered "no" to Question 17 on his application.

Accordingly, we grant Roger Alfaro's petition.

**PETITION GRANTED.**

7